UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY L. MERVYN,

        Plaintiff,                    CIVIL ACTION NO. 04-CV-71601-DT

vs.

                                 DISTRICT JUDGE AVERN C. COHN

COMMISSIONER OF
SOCIAL SECURITY,                MAGISTRATE JUDGE MONA K. MAJZOUB

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**. The decision of the Commissioner is supported by substantial evidence on the record.

## PROCEDURAL HISTORY

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence on the record.

Plaintiff Randy L. Mervyn filed an application for Child Insurance Benefits (CIB) and Supplemental Security Income (SSI) in 1999. (Tr. 61-2). Plaintiff's applications alleged he had been disabled since a 1989 motorcycle accident. Defendant initially denied these applications. (Tr. 41-44, 161-64). Plaintiff sought review a hearing before an ALJ for review of the decision, but failed to appear for the scheduled hearing. (Tr. 177-180). Defendant dismissed Plaintiff's request for review. *Id.*

Plaintiff's filed a second application for Child Insurance Benefits (CIB) and Supplemental Security Income (SSI), filed on May 17, 2001, again alleging that he had been disabled since 1989.

Defendant again denied Plaintiff's claims on December 28, 2001. (Tr. 185). The Plaintiff requested review and received a hearing before Administrative Law Judge G. Roderic Anderson on July 31, 2003. (Tr. 407). The ALJ issued an opinion denying Plaintiff's claims October 21, 2003. (Tr. 28). The ALJ's decision then became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff appealed the denial of his claims to this Court, and both parties have filed motions for summary judgment.

## MEDICAL HISTORY

Plaintiff was born on June 13, 1978. (Tr. 413). Plaintiff was involved in a motorcycle accident in 1989, when he was eleven years old. The accident caused severe damage to his right foot, leg and ankle.

On December 11, 1998, Plaintiff visited Michael Ambroziak, D.P.M., for reconstructive surgery on his right foot. (Tr. 116-7). Prior to the 1998 surgery, Plaintiff had already had a total of eight surgeries on his right foot. *Id.* Dr. Ambroziak inspected Plaintiff's right foot and noted that it was pale to purple with cyanosis. *Id.* Plaintiff had five hammer toes on the right foot, a plantar flex of the right metatarsal, and several severe extensor tendon contractures, especially in extensor hallucis longus, which appeared to be bound up in scar tissue from a skin graft over that part of the foot. *Id.* Also Plaintiff's tibial left anterior tendon on the right foot kept the foot in a cavus varus attitude. *Id.*

On January 22, 1999, Plaintiff visited Dr. Ambroziak again, complaining of severe pain near the scar on his heel. (Tr. 127). Dr. Ambroziak concluded that Plaitniff's tarsal tunnel had adhered to a nerve in his heel. *Id.* Dr. Ambroziak performed a tarsal tunnel release to fix the problem, though he noted that scar tissue might re-adhere to the nerve after surgery. (Tr. 129).

Plaintiff continued to complain of pain in his right foot and ankle. On December 8, 2000, a bone scan of Plaintiff's feet showed normal circulation in both feet. (Tr. 252). On January 2, 2001, after reviewing the bone scan and other medical records, John C. Kohn, D.O. opined that Plaintiff's pain was

neuropathic. (Tr. 249). Dr. Kohn recommended changing Plaintiff's prescriptions. *Id.* Dr. Kohn also recommended a lumbar nerve block to rule out the possibility that Plaintiff was suffering from complex regional pain syndrome. (Tr. 250). Plaintiff received a lumbar nerve block on January 13, 2001. (Tr. 256).

Richard Levy, M.D. performed a CT scan on Plaintiff's lumbar spine on October 10, 2002. (Tr. 267). Plaintiff's spine appeared normal at the L1-2 through L3-4 levels but exhibited mild circumferential disc bulging, mild facet and ligamentous hypertrophy and mild to moderate degenerative spinal stenosis at the L4-5 level. (Tr. 267). On November 18, 2002, Plaintiff visited Michael D. Papenfuse, D.O., complaining of pain in his lower back and right foot. Dr. Papenfuse concluded that Plaintiff's lower back pain resulted from degenerative joint disease in the lumbar spine and was exacerbated by Plaintiff's uneven gait. (Tr. 334). Dr. Papenfuse concluded that the persistent pain in Plaintiff's right was due to Complex Regional Pain Syndrome I. *Id.*

On March 5, 2003, Craig J. Pilichowski, D.P.M. examined Plaintiff's right foot and ankle. (Tr. 383-4). On examination, Plaintiff's foot exhibited many of the same features it had before Dr. Ambroziak's 1998 reconstructive surgery, specifically multiple hammertoes, a dorsal contracted hallux in the first metatarsal region, a plantar flex of the right metatarsal, and several severe extensor tendon contractures. (Tr. 383). Dr. Pilichowski discussed treatment options with Plaintiff, who indicated that he wished to have another reconstructive surgery. (Tr. 384). An MRI of Plaintiff's lumbar spine taken on March 20, 2003 was normal except for mild bulging of the annulus at L4-5. (Tr. 324).

## **TESTIMONY AT THE HEARING**

Plaintiff's claims were originally scheduled for hearing on March 3, 2003. (Tr. 400). Plaintiff appeared before ALJ Douglas Jones on March 3, 2003 without counsel. (Tr. 402). Judge Jones indicated that he would postpone the hearing if Plaintiff wished to retain counsel. (Tr. 403). Plaintiff

elected to postpone the hearing, and he appeared with counsel before ALJ G. Roderic Anderson on July 31, 2003. (Tr. 407).

At the hearing the ALJ took testimony from the Plaintiff and Ann Tremblay, a vocational expert. *Id.* Plaintiff testified that his foot condition caused him to lose his last job, which had involved standing for eight hours a day and wearing steel-toed boots. (Tr. 416). Plaintiff testified that this job had regularly required him to bend, twist, and lift thirty to forty pounds. (Tr. 419).

Plaintiff testified that he had undergone a total of eleven surgeries on his foot, performed by four different doctors. (Tr. 427). He claimed that he needed to elevate his foot for an extended period of time each day. (Tr. 426). Plaintiff also claimed that he was limited by severe pain in his right knee. (Tr. 428-30). Plaintiff testified that he is able to sit for a few hours at a time (Tr. 448).

The vocational expert testified about the availability of jobs for persons like the Plaintiff. (Tr. 460). She was instructed to testify about the availability of jobs for a hypothetical person of Plaintiff's age and educational level with some additional physical limitations. (Tr. 462). The vocational expert testified that a person of Plaintiff's age and educational level who suffered from all of the physical problems Plaintiff complained of at the hearing would be precluded from all work. (Tr. 462). The vocational expert was also asked to testify about the availability of work for a person of Plaintiff's age and educational level who was able to do light unskilled work that provided an option to sit or stand, who could lift up to ten pounds frequently and twenty pounds on occasion, but could not perform any job that required prolonged or repetitive pushing, pulling, bending, twisting, crawling, stooping, squatting, kneeling, climbing stairs of stairs or ladders, standing, walking, neck rotation, flexion, or hyperextension, extensive use of the right leg, exposure to extreme cold, a need to wear steel toed shoes, or any balancing. (Tr. 462-3). A person with these limitations, the vocational expert testified,

would be able to work in a number of jobs in the light and sedentary categories, in positions such as inspector, assembler, cashier, and security monitor. (Tr. 463).

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## DISCUSSION AND ANALYSIS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

>    (3)   the impairment met or was medically equal to a "listed impairment;" or
>
>    (4)   he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff first argues that the ALJ erred at step 3 in determining that Plaintiff did not meet or medically equal the listed impairments for major dysfunction of a joint, reconstructive surgery of a major weight bearing joint, or soft tissue injury. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02, 1.03, 1.08 ("listing 1.02," "listing 1.03," "listing 1.08"). At step 3, Plaintiff bears the burden of proving that he met or medically equaled a listed impairment. As discussed below, the ALJ's decision that Plaintiff did not meet or medically equal these listed impairments was supported by substantial evidence on the record.

To meet the requirements for listing 1.02, major dysfunction of a joint, or 1.03, reconstructive surgery of a major weight bearing joint, Plaintiff must show that he is "unable to ambulate effectively." Inability to ambulate effectively means "an extreme limitation in the ability to walk." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1). A person is unable to ambulate effectively when he cannot walk independently "without the use of a hand-held assistive device that limits the functioning of both upper

extremities." *Id.* The code includes examples of "ineffective ambulation": an inability to walk a block on an uneven surface at a reasonable pace, an inability to use standard public transportation, and an inability to carry out routine activities such as shopping and banking. *Id.*

The ALJ's conclusion that Plaintiff was able to ambulate effectively is supported by substantial evidence on the record. While the record is replete with evidence that Plaintiff's foot is painful and deformed, the medical evidence does not note any substantial restriction in Plaintiff's ability to walk, and Plaintiff's testimony on the record suggests that he can walk effectively. Plaintiff testified that he could walk fifty to one hundred feet comfortably, and up to five hundred feet with some discomfort. (Tr. 428, 448). When Plaintiff visited Dr. Field, a neurosurgeon, in March, 2003, he noted that Plaintiff's gait was normal. (Tr. 367). Plaintiff's daily activities included child care and taking out the trash. (Tr. 94-97). Substantial evidence on the records supports the ALJ's finding that Plaintiff did not meet either listing 1.02 or listing 1.03.

Plaintiff also contends that his foot and ankle conditions meet listing 1.08, "Soft tissue injury." To meet the requirements of 1.08, Plaintiff must demonstrate that the major function of his leg has not been restored and is not expected to be restored within 12 months after his injury. Listing 1.08 does not define the "major function" of Plaintiff's leg. However, a pragmatic reading of listing 1.08 in conjunction with the leg specific listings 1.02, 1.03, and 1.06, and the portion of 20 C.F.R. Pt. 404 Subpt. P., App. 1, § 1.00(B)(2)(a) defining functional loss as the "inability to ambulate effectively on a sustained basis.," clarifies that the major function of the legs is to provide the ability to walk effectively. As noted above, substantial evidence on the record supports the ALJ's conclusion that Plaintiff is able to walk effectively within the meaning of the Social Security Code. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1). Substantial evidence supports the ALJ's step 3 decision that Plaintiff did not meet or medically equal a listed impairment.

Plaintiff next argues that the ALJ's step five finding that there was work available in the economy that Plaintiff could perform was flawed because the ALJ improperly instructed the vocational expert. The ALJ the vocational expert to testify about whether there would be jobs in the economy for a person of Plaintiff's age and educational level who had the residual functional capacity for light work, but who could not stand or walk for any prolonged period. (Tr. 462). In his written opinion, the ALJ concluded that Plaintiff had the functional capacity for light work, but could stand or walk for no more than two hours in an eight hour workday. (Tr. 25). Plaintiff argues that the ALJ's reliance on the vocational expert's testimony was misplaced because the vocational expert was not instructed to eliminate light jobs that required walking or standing for a total of more than two hours in a day.

The ALJ's step five finding that there is work available in the economy for Plaintiff can stand so long as there is substantial evidence on the record that Plaintiff has the vocational qualifications to perform specific jobs in the national economy. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The testimony of a vocational expert in response to a hypothetical question is substantial evidence supporting an ALJ's decision only if the hypothetical question accurately portrays the plaintiff's functional limitations. *Howard v. Comm'r*, 276 F.3d 235 (6th Cir. 2002).

Plaintiff's argument fails because substantial evidence supports the ALJ's conclusion that there are jobs in the economy available to him. During her testimony, the vocational expert testified that Plaintiff has the vocational qualifications and functional capacity to work in one of roughly 10,000 positions in several sedentary job categories. (Tr. 463). Sedentary jobs, by definition, do not require standing or walking for more than two hours in an eight hour workday. 20 C.F.R. §§ 404.1567(a), 414,967(a). The vocational expert's testimony properly identified thousands of jobs Plaintiff could perform, and is sufficient support for the ALJ's decision.

Plaintiff next argues that the ALJ improperly determined Plaintiff's functional capacity. In particular, Plaintiff argues that the ALJ's functional capacity assessment failed to incorporate all of the physical limits upon Plaintiff's ability to walk. Plaintiff believes the record required the ALJ to conclude that Plaintiff must elevate his feet for an hour twice a day, and that Plaintiff cannot stand or walk for two hours in an eight hour day.

The ALJ's functional capacity assessment of Plaintiff was supported by substantial evidence on the record. He concluded that Plaintiff retains the residual functional capacity to stand or walk for up to two hours in an eight hour day, provided that he have the option to sit or stand while working, that he need not walk or stand for more than two hours in an eight hour day, and need not crawl, stoop, squat, kneel, balance, climb stairs, climb balance, wear steel-toed shoes, or use his right leg or foot extensively. (Tr. 25).

At the administrative hearing, Plaintiff testified that he was able to stand for a few hours and sit for *a few hours in the day*, so long as he could alternate standing and sitting and did not need to stand for a prolonged period. (Tr. 448-49). Plaintiff also reported being able to walk one hundred feet comfortably, and up to five hundred feet with some discomfort. (Tr. 428). Plaintiff also said that he was unable to wear steel toed boots due to his foot deformity. (Tr. 422). The ALJ fully incorporated the restrictions implied in these portions of Plaintiff's testimony into his residual functional capacity assessment.

Plaintiff also testified that he needed to elevate his feet for one hour twice each day. The ALJ's decision to discount this portion of Plaintiff's testimony was supported by substantial evidence on the record. Plaintiff's medical records show that the circulation in Plaintiff's feet was adequate after 1999. (Tr. 133, 251, 255, 367, 372, 383). Plaintiff's treating physician opined on April 23, 2003 that Plaintiff was able to work in a sit down job with minimal walking. (Tr. 378). The voluminous medical records

pertaining to Plaintiff's medical condition show that Plaintiff had persistent foot and ankle pain, most likely neuropathic in nature, but they do not indicate that Plaintiff needed to elevate his foot to obtain relief, or that Plaintiff's ability to stand and walk was more limited than the description in the ALJ's physical capacity assessment. Substantial evidence on the record supports the ALJ's determination that Plaintiff did not need to elevate his foot for an hour twice a day, and that Plaintiff retained the ability to stand or walk for short periods of time amounting to two hours in an eight hour workday.

Finally, Plaintiff argues that new evidence requires a remand under 42 U.S.C. § 405(g) for rehearing of Plaintiff's claims. In order to obtain a sentence remand, Plaintiff must (1) show good cause for failing to introduce the evidence into the administrative record prior to the ALJ's decision, and (2) that the new evidence is sufficiently material that there is a reasonable probability that the ALJ would have reached a contrary disposition had he considered the evidence. *Willis v. Sec'y of Health and Human Servs.*, 727 F.2d 551, 553-4 (6th Cir. 1994); *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

Plaintiff is not entitled to a remand because he has failed to show good cause. The administrative hearing in this case took place on July 31, 2003, and the ALJ rendered a decision on October 21, 2003. The evidence on the record shows that Dr. Pilichowski examined Plaintiff on March 5, 2003, and charted his findings in the record at the time of Plaintiff's office visit, well before the administrative hearing. There is no evidence on the record that Dr. Pilichowski examined Plaintiff on a later date. (Tr. 383-4). Plaintiff is requesting a remand based upon Plaintiff's failure to include in the record a second note by Dr. Pilichowski, dated November 5, 2003. In this second note, Dr. Pilichowski re-summarizes Plaintiff's condition as he found him on March 5, 2003, and then checked off two boxes checked that he believes Plaintiff cannot work. However, even Plaintiff admits that the new record was based on an examination of a medical condition that had been stable for years prior to the ALJ's

decision. The record demonstrates that Dr. Pilichoswki's treatment relationship with Plaintiff began no later than March, 2003, some six months before the ALJ's decision. Plaintiff further fails to advance any reason why Dr. Pilichowski could not have produced this form in July, August, or September of 2003 rather than November of 2003.

Even if there were good cause for Plaintiff's delay, the evidence he seeks to admit is not material. The form found at Tr. 399 contains approximately eighteen words written by Dr. Pilichowski substantially repeating his prior diagnosis. The new and allegedly material data on the form consists of two checked boxes indicating that Dr. Pilichowski believes Plaintiff cannot do any work. It is exceedingly unlikely that the ALJ would have reached a contrary decision with this evidence in the record, since Dr. Pilichowski's extraordinarily cursory statement addresses an ultimate legal issue whose determination is reserved to the Commissioner, and the new statement is in conflict with the more detailed medical records Dr. Pilichowski had generated earlier for purposes of diagnosis and treatment.

## **RECOMMENDATION**

The Commisioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment should be DENIED, and. Defendant's Motion for Summary Judgment should be GRANTED.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n*

*of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: 4/14/05                          s/ Mona K. Majzoub
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE


**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon Victor L. Galea and Janet L. Parker on this date.

Dated: 4/14/05                          s/ Lisa C. Bartlett
                                        Lisa C. Bartlett