UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY MERVYN,

    Plaintiff,

v.                                                Case No. 04-71601

COMMISSIONER OF SOCIAL SECURITY,    HONORABLE AVERN COHN

    Defendant.

_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    This is a social security case. Plaintiff Randy Mervyn (Mervyn) appeals from the final decision of the Commissioner of Social Security (the Commissioner) denying him Child Insurance Benefits (CIB)[1] and Supplemental Security Income (SSI)[2] under various sections of the Social Security Act. An Administrative Law Judge (ALJ) conducted a hearing and determined that Mervyn was not entitled to benefits. The Social Security Administration's Appeals Council denied review of the ALJ's decision.

    Mervyn filed this action for judicial review under 42 U.S.C. § 405(g). The matter

---

[1] "Under Section 402(d) of Title 42 of the United States Code, a person is eligible for child insurance benefits if that person files an application, is unmarried and under 18 years of age or suffers from a disability incurred before reaching age 22, and was dependent upon an eligible wage-earner who died, became disabled, or was entitled to old age insurance." Houck v. Comm'r of Soc. Sec. 359 F.Supp.2d 631, 632 (6th Cir. 2005).

[2] "In 1972, Congress added a new social security program to provide "supplemental security income" (called "SSI") for "aged blind and disabled" persons of limited means regardless of their insured status. 42 U.S.C. §§1381(a), 1382. This is a social welfare program funded out of general taxpayer revenues." Splude v. Apfel 165 F.3d 85, 87 (1st Cir. 1999).

was referred to a magistrate judge, before whom Mervyn and the Commissioner filed motions for summary judgment. The magistrate judge issued a report and recommendation (MJRR) recommending that the ALJ's decision be upheld. Mervyn filed objections to the MJRR and the Commissioner filed a response.

For the reasons that follow, Mervyn's motion for summary judgment is DENIED and the Commissioner's motion for summary judgment is GRANTED. This case is DISMISSED.

## II. Background

The MJRR accurately sets forth the facts, some of which are repeated here.

Mervyn was born on June 13, 1978, and completed school through the tenth grade. In June 1989, Mervyn was involved in a motorcycle accident where his right foot was crushed and his right leg was fractured. As a result, Mervyn underwent several foot and leg surgeries. Mervyn previously received benefits as a dependent child of Melvin L. Mervyn. These benefits expired when Mervyn turned 18. Mervyn has worked and an industrial painter and an assembler. He claimed disability because of pain-producing conditions in his foot, leg and back. He applied for CIB and SSI in November 1999. The Commissioner denied the applications. Mervyn sought relief before an ALJ, but his claims were dismissed when he failed to appear for the scheduled hearing. Mervyn filed a second application for CIB and SSI in May 2001, alleging that he had been disabled since 1989. The Commissioner again denied Mervyn's claims. Mervyn requested and received a hearing before an ALJ on July 31, 2003. The ALJ issued a final decision under 20 C.F.R. § 404.981 denying Mervyn benefits. The Social Security

Administration's Appeals Council denied review and Mervyn filed a complaint for judicial review. Both parties have filed motions for summary judgment.

### A. Mervyn's Testimony at the Administrative Hearing

Mervyn testified at the administrative hearing that he injured his foot in a motorcycle accident when he was younger. As a result, Mervyn has undergone eleven surgeries and sought treatment from four different doctors. Mervyn testified that because of the injury, he needs to elevate his foot for an extended period of time each day. Mervyn also indicated that he is limited by severe pain in his right knee caused by the imbalance of his foot and can only sit for a short period of time. He testified that his foot injury had caused him to lose his factory job. This job involved wearing steel-toed boots, standing for approximately eight hours a day, regular bending and twisting, and lifting thirty to forty pounds. Mervyn testified that he cannot work because of back pain and pain in his foot. He said he lives on the first floor of a two-story house that he shares with his brother. He has two children who do not live with him. Mervyn testified that he does not perform chores around the house. He is physically able to drive, although his driver license was suspended due to nonpayment of traffic tickets. Mervyn noted that he uses a cane to help him walk and that he loses his balance and stumbles frequently.

### B. Medical Evidence

In November 1998, Mervyn went to see Dr. Michael Ambroziak (Ambroziak) and learned that he needed reconstructive surgery on his right foot. Ambroziak noted that Mervyn's right foot was discolored, had a plantar flex of the right metatarsal, and several

nerve extensor tendon contractures which were bound up in scar tissue from a skin graft. The foot also had cyanosis. The toes on the foot were deformed and classified as hammer toes. In December 1998, Mervyn had the reconstructive surgery. Two months later, Mervyn underwent tarsal tunnel release surgery because of the tarsal tunnel adhering to a nerve in his heel. Prior to these procedures, Mervyn had a total of eight surgeries on his foot because of his motorcycle accident.

The pain in Mervyn's foot and ankle continued, so he went to see Dr. Keith B. Daniels (Daniels). In early December 2000, Daniels took a bone scan of Mervyn's feet. The results showed normal circulation in both feet. Daniels referred Mervyn to Dr. John C. Kohn (Kohn), a pain management specialist. Upon examining the medical record, Kohn opined that Mervyn's pain was neuropathic. Kohn subsequently recommended a lumbar nerve block to determine whether or not Mervyn was suffering from regional pain syndrome.

On October 10, 2002, Dr. Richard Levy performed a CT scan on Mervyn's spine. The results showed that Mervyn's spine appeared normal at L1-2 to L3-4 levels but exhibited mild disc bulging, mild facet and ligamentous hypertrophy and mild to moderate degenerative spinal stenosis at the L4-5 level.

Mervyn next went to Dr. Michael D. Papenfuse (Papenfuse) on November 18, 2002, complaining of pain in his lower back and right foot. Papenfuse concluded that the pain in Mervyn's back could be attributed to degenerative joint disease in the lumbar spine and was aggravated by Plaintiff's uneven way of walking due to the foot injury. Papenfuse prescribed Vicodin for Mervyn with no refills and suggested a lumbar

injection.  Mervyn underwent a lumbar block in December 2002.

In February 2003, Mervyn went to Dr. Craig J. Pilichowski (Pilichowski) to examine his foot and ankle.  The examination showed that Mervyn's foot exhibited many features that were present prior to the 1998 reconstructive surgery -- specifically, multiple hammertoes, a dorsal contracted hallux in the first metatarsal region, a plantar flex of the right metatarsal, and several severe extensor tendon contracture.  After discussing potential treatment options with Pilichowski, Mervyn decided to opt for another reconstructive surgery.

In March 2003, Mervyn went to neurosurgeon E. Malcolm Field for an examination.  A MRI was taken of Mervyn's spine.  The test showed normal results, except for a minor bulging of the annulus at L4-5.

### C. Vocational Expert's Testimony

Vocational Expert (VE) Ann Tremblay testified to the availability of jobs for hypothetical persons with similar age, education, work experience and physical limitations as Mervyn.  The VE concluded that Mervyn should be precluded from continuing his job as a stock person.  The VE testified that a hypothetical worker similar to Mervyn would be able to adjust to unskilled jobs such as a cashier, security monitor, identification clerk, inspector, assembler and sorter.  The VE also testified that there are approximately 26,000 jobs applicable to Mervyn's capability within the Lower Peninsula of Michigan.

**D. ALJ's Decision**

The ALJ concluded that Mervyn is not eligible for CIB and SSI payments. The ALJ's written decision declared that Mervyn was not under a "disability" as defined in 20 C.F.R. §§ 404.1520(f) and 416.920(f) at any time through the date of the decision. The ALJ found that Mervyn is a younger individual[3] with a limited education.[4] The ALJ also found that Mervyn has an impairment or a combination of impairments considered to be "severe" under the requirements of 20 C.F.R. §§ 404.1520(b) and 416.920(b). These impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, of 20 C.F.R. § 404. Additionally, the ALJ found Mervyn's testimony to be less than entirely credible. The assistance of a cane is not work-preclusive, and Mervyn's failure to perform chores around the house is because of choice, not disability.

Using the Medical-Vocational Rule 202.17 as the basis for his decision, the ALJ determined that Mervyn has the Residual Functional Capacity (RFC) to perform a reduced range of light work under 20 C.F.R. § 416.967.[5] Though Mervyn cannot perform the full range of light work, the ALJ held that there are still a significant number of jobs within the national economy appropriate for Mervyn and his condition.

The ALJ held that Mervyn is capable of performing light work consisting of occasional lifting of up to twenty pounds or frequent lifting of up to ten pounds. The ALJ found that Mervyn is able to sit for six hours and stand or walk for two hours within an

---

[3] Under 20 C.F.R. §§ 404.1563 and 416.963.
[4] Under 20 C.F.R. §§ 404.1564 and 416.964.
[5] RFC is defined as the most an individual can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks under 20 C.F.R. §§ 404.1545 and 416.945.

eight-hour work day.[6] The ALJ found that Mervyn cannot be required to perform prolonged walking or standing, any repetitive pushing, pulling, twisting, turning, bending, crawling, stooping, squatting, kneeling or balancing. Additionally, the ALJ noted that Mervyn cannot climb stairs or ladders, wear steel-toed boots, tolerate cold temperatures or perform tasks that involve repetitive or prolonged rotation, flexion, or hyperextension of the neck. The ALJ said that Mervyn can perform tasks requiring a limited use of his right lower extremities.

After examining the record, the ALJ concluded that Mervyn's testimony was less than entirely credible. The ALJ found that the record does not mirror the nature and extent of Mervyn's claims of gait and station difficulties. The ALJ further found that in terms of Mervyn's daily activities at home, it appears that his nonfeasance is a result of his choice rather than a result of his impairments.

### III. Standard of Review

Judicial review of a Social Security disability benefits application is limited to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." Walters v. Comm'r of Soc. Sec. 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. Brainard v. Sec'y of Health & Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The

---

[6] Mervyn requires the option to alternate between sitting or standing.

substantiality of the evidence must be based upon the record taken as a whole. Futernick v. Richardson, 484 F.2d 647, 649 (6th Cir. 1973). "[T]he decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). The portions of the MJRR that the claimant finds objectionable are reviewed de novo. See 28 U.S.C. § 636(b)(1)(C); Smith v. Detroit Fed'n of Teachers, Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

### IV. Discussion

The plaintiff's Social Security disability determination must be made in accordance with a five-step sequential analysis under 20 C.F.R. § 404 (Regulation). In the first four steps, the plaintiff has the burden to prove:

(1) he is not presently engaged in substantial gainful employment;
(2) he suffers from a severe impairment;
(3) the impairment meets or is medically equal to a "listed impairment;" or
(4) he does not have the residual functional capacity (RFC) to perform his relevant past work.[7]

If the first four steps are met, the burden shifts to the Commissioner who must consider the applicant's RFC, age, education and past work experience to determine the fifth step, which decides whether the applicant is able to perform other work. If the applicant

---

[7] See 20 C.F.R. § 404.1520(a)-(e) (2005) and 20 C.F.R. § 416.920(a)-(e).

cannot perform other work, he or she is deemed disabled and is eligible for benefits. 20 C.F.R. § 404.1520(f).

### A. The Application of the List of Impairments (Step 3)

Though Mervyn is not presently engaged in substantial gainful employment and has suffered a severe impairment, he still has the burden of proving that his impairment meets the one of the requirements articulated in the "list of impairments" (List) found in Appendix 1 of the Regulation.[8] If the question of meeting the burden is close, the court should not disturb the findings of the ALJ. Price v. Heckler, 767 F.2d 281, 284 (6th Cir. 1985). The ALJ determined that Mervyn failed to meet the burden and has no impairment or combination of impairments that meets or equals any of the impairments descried in the List. The ALJ concluded that Mervyn did not meet the definition of inability to ambulate effectively as set forth in section 1.00(B)(2)(b) of the List.

In Part A of Appendix 1 of the Regulation, Musculoskeletal System impairments are explained. The Regulation states that, "[d]isorders of the musculoskeletal system may result from . . . traumatic or developmental events," and "[u]nder this section, loss of function may be due to bone or joint deformity or destruction from any cause." 20 C.F.R. § 404, Subpt. P, App. 1, Pt. A, 1.00(B)(1) (2005). The Regulation continues by defining a loss of function: "[f]unctional loss for the purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment." Id. at 1.00(B)(2)(a). The Regulation explains the meaning of "inability to ambulate" as:

---

[8] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

> An extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of hand-held assistive device(s) that limits the functioning of both upper extremities.

Id. at 1.00(B)(2)(b)(1).

The Regulation continues by listing examples which include:

> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, inability to use public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Id. at 1.00(B)(2)(b)(2). The Regulation notes that this list of examples is not exhaustive and the inability to ambulate effectively is not limited to conditions set forth in the list.

Mervyn has the duty to prove to the Commissioner that he could not ambulate effectively. Both the ALJ and the magistrate judge concluded that this burden was not met. Though the record shows that Mervyn's foot is deformed and painful, it also offers substantial evidence that Mervyn can ambulate effectively. Testimony shows that Mervyn can walk fifty to one hundred feet comfortably and up to five hundred feet with some discomfort. After an examination in March 2003, Dr. Field concluded that Mervyn's gait was normal. Mervyn argues that Dr. Field's observations should be discounted because he is primarily a back specialist. Even if the Court chooses to consider this argument, it still fails to prove Mervyn's inability to ambulate effectively. The ALJ and magistrate judge similarly relied on the evidence that Mervyn's daily

activities included taking care of children as well as taking out the trash.  Mervyn points to the Regulation showing that the ability to walk around one's home without assistive devices does not, in itself, constitute effective ambulation.  Yet without anything further, Mervyn fails to meet his burden of proving that he cannot ambulate effectively.  Both the ALJ and magistrate judge found that oftentimes Mervyn's activity or lack thereof is not because of disability but rather because of choice.  Substantial evidence supports these conclusions.

Both the ALJ and the magistrate judge rejected Mervyn's argument that his injury is classified as a "Soft Tissue Injury" under 20 C.F.R. § 404, Subpt. P, App. 1, Pt. A, 1.08 (2005).  Under this section of the Regulation, the plaintiff has the burden to prove that the "Soft Tissue Injury" has caused the major function of the leg to be lost and will not be restored within twelve months after the date of the injury.  The term "major function" is not expressly defined within the regulation.  A practical reading of Listing 1.02, 1.03, 1.06 and the portion of 20 C.F.R. § 404, Subpt. P, App. 1, Pt. A, 1.00(B)(2)(a) defines functional loss as "the inability to ambulate effectively on a sustained basis." This definition shows that the "major function" of the legs is to walk effectively.  As noted above, Mervyn failed to prove that he cannot walk ineffectively and cannot be classified as disabled under the "Soft Tissue Injury" subpart of the Regulation.

### B. The ALJ's Residual Functional Capacity Findings and the Vocational Expert's Findings (Steps 4 and 5)

The ALJ's determination of Mervyn's RFC resulted in the conclusions (1) that Mervyn can perform a reduced range of light work under 20 C.F.R. § 416.967 and (2)

Mervyn's arguments to the contrary lacked credibility. The magistrate judge concurred with the ALJ's findings and found that the ALJ's RFC assessment of Mervyn was supported by substantial evidence in the record.

Mervyn objects to both the findings of the ALJ and the magistrate judge by arguing that his injuries were not properly addressed and classified under the Listing in Appendix 1 of the Regulation, causing an error in the RFC determination. This argument fails because the ALJ and magistrate judge properly addressed and classified Mervyn's injuries.

Mervyn says that although the record shows he has good circulation in his foot, there are secondary reasons for the need to have his foot elevated that would change his RFC. Mervyn claims that the deformities of his foot cause severe pain and swelling and often prevent him from even wearing shoes. Aside from the deformities, Mervyn says that reflex sympathetic dystrophy and complex regional pain syndrome require him to elevate his feet for a significant period during a normal day.

The ALJ discounted Mervyn's testimony concerning the need to elevate his foot because Mervyn's testimony lacked credibility and there was substantial evidence in the record establishing this. The Court of Appeals for the Sixth Circuit has noted that an ALJ's findings regarding a claimant's credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters, 127 F.3d at 531. Any credibility assessment made by an ALJ, however, must be supported by substantial evidence in the record. Id. In rejecting Mervyn's argument for lack of credibility, the magistrate judge cites Jones v.

Comm'r of Soc. Sec., which states, "[u]pon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." Jones v. Comm'r of Soc. Sec., F.3d 469, 476 (6th Cir. 2003). The ALJ found that Mervyn's medical record shows adequate circulation in Mervyn's foot as of 1999. The record shows that on April 23, 2003 a doctor issued a report that Mervyn is capable of working a sit-down job with minimal walking. Though the voluminous medical records describe the pain that Mervyn has because of his foot, they do not indicate the need to elevate his foot periodically to relieve the pain. This evidence supports the magistrate judge's determination that Mervyn lacks credibility concerning his testimony for the need to elevate his foot.

Mervyn further argues that because of the supposed error in the ALJ's determination of his RFC, the instructions given to the VE also were in error. Because the Court finds that substantial evidence supports the ALJ's RFC determination, Mervyn's objection is without merit.

### C. New Material Evidence

Mervyn next argues that new evidence exists that would alter the findings of the ALJ. Accordingly, Mervyn says he is entitled to remand under 42 U.S.C. § 405(g). Mervyn contends that a note from Pilichowski dated November 5, 2003, which was presented after the ALJ determination, corrects a supposed mistake that Pilichowski made by checking the wrong boxes indicating Mervyn's work capabilities. The

magistrate judge properly determined that Mervyn lacked good cause and the newly proffered evidence was immaterial.

To obtain a remand under 42 U.S.C. § 405(g), plaintiff must (1) show good cause for failing to introduce the evidence into the administrative record prior to the ALJ's decision, and (2) that the new evidence is sufficiently material that there is a reasonable probability that the ALJ would have reached a contrary disposition had he considered the evidence.  Willis v. Sec'y of Health and Human Serv., 727 F.2d 551, 553-54 (6th Cir. 1994).

First, the magistrate judge correctly determined that Mervyn is not entitled to remand because he failed to show good cause.  Mervyn and Pilichowski began their doctor-patient relationship no later than March 2003.  There is no evidence in the record showing that Pilichowski examined Mervyn after March 5, 2003.  Mervyn argues that Pilichowski made the mistake in his examination report dated March 5, 2003.  The supposed mistake was the failure to check two boxes that would have deemed Mervyn unable to work.  The administrative hearing was conducted on July 31, 2003, and the ALJ's determination was rendered on October 21, 2003.  Mervyn has failed to explain why he did not have the mistake corrected and thus have the new evidence produced during the approximate two and a half months between the date of the hearing and the ALJ's decision.  Mervyn argues that he had no control of the timing of the submission of the new evidence and that it was not available to him before November 2003, but he fails to explain why.  Mervyn merely says that the doctor's note in question was written on a Family Independence Agency form.

Second, the magistrate judge correctly determined that Mervyn is not be entitled to remand because the new evidence is immaterial.  The piece of evidence in question is nearly identical to the note from Pilichowski dated March 5, 2003.  Both notes resulted from the same examination which took place before the ALJ's determination was rendered.  Both notes identically summarize Mervyn's condition.  The only difference between the two notes is that in the second note Pilichowski checked two boxes that say Mervyn cannot work.  Mervyn has admitted that the new note was based on a medical condition that had been stable for years prior to the ALJ's decision.

It is unlikely that the ALJ would have reached a contrary decision, even with this evidence in the record.  Though this new evidence might conflict with the record, there is substantial evidence, including former statements of Pilichowski as well as other doctors, that outweighs this single piece of evidence.

## V. Conclusion

For the foregoing reasons, the ALJ's decision is AFFIRMED.

SO ORDERED.


Dated:  July 25, 2005
       s/Avern Cohn
       AVERN COHN
       UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was sent to counsel of record on this date, July 25, 2005, by electronic and/or ordinary mail.

       s/Julie Owens
       Case Manager, (313) 234-5160

16